Linda KENDALL, Plaintiff-Appellant,

v.

The BOARD OF EDUCATION OF the MEMPHIS CITY SCHOOLS; Members of the Board of Education of the Memphis City Schools, Individually and in their official capacities; John P. Freeman, Individually and as Superintendent of the Memphis City Schools, Defendants-Appellees.

Nos. 78–1498, 78–1499.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided July 14, 1980.

Charles Hampton White, Cornelius, Collins, Higgins & White, Nashville, Tenn., for plaintiff-appellant.

Ernest G. Kelly, Jr., Cobb, Dewards, Hamlet, Nichol & Woodall, Memphis, Tenn., for defendants-appellees.

Before MERRITT, MARTIN and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Linda Kendall was employed by the Board of Education of the Memphis City Schools (Board) in the 1975–76 school year under a one-year contract. The Board discharged Kendall on March 11, 1976 without a prior hearing for alleged violations of the Board's policies on corporal punishment and reporting students' accidents. After trial on her claim alleging violation of her Fourteenth Amendment right to due process the district court awarded Kendall the balance of her salary under the 1975–76 contract, but denied reinstatement, back pay, attorneys fees, and punitive damages. Kendall appeals the denial of reinstatement and back pay. The Board has filed a cross-appeal contesting the finding of liability and the award of any damages. We affirm the finding of liability, but remand for further factfinding on the award of damages.

I.

In March, 1976, Linda Kendall was a non-tenured kindergarten teacher in her second full year at Raines Haven Elementary School. On March 1, 1976, Kendall's class had joined the kindergarten class taught by Willie Mae Woods to watch an educational program on television. While the students watched television, Kendall and Woods used a tacking iron to laminate name tags. One student, Marlo Jackson, approached the teachers and was slightly burned when Woods turned around with the hot laminating iron in her hand. The teachers applied a bandage and told the student to show her mother the burn. Shortly afterward, Woods called Ronnie Woody, who had been misbehaving, up to the desk where she and Kendall were working. Somehow Woods also burned Woody with the laminating iron, but Kendall did not see whether Woody was burned or how he was burned. Neither teacher reported either burn on an accident report. The parents of Jackson and Woody did not complain about the burns until after the Superintendent discharged Kendall.

On March 5, 1976, a mother of one of Kendall's students informed the principal at Raines Haven Elementary School that, according to her child, two students in Kendall's class had been burned. The principal, Nancy Holmes, checked with Jackson and Woody and observed their burns. Holmes informed Kendall that a parent had charged Kendall and Woods with intentionally burning the two children. Holmes then interviewed a number of other students in the class.

After talking with Kendall again about the incident, Holmes sent a written report to Callie Stevens, the Area Superintendent. Holmes advised Stevens that Woods and Kendall had deliberately burned the students. Stevens interviewed Kendall, allowed Kendall to submit a written statement, and read Holmes' report to Kendall. Stevens concluded that probably Woods and Kendall had deliberately abused the children, and that they were definitely guilty of neglect of duty and conduct unbecoming a teacher. Stevens sent her report to Thelma Nichols,[1] Director of Certificated Personnel.

The next day Nichols questioned Kendall, who was accompanied for the first time by Joseph Jordan, a representative of the Memphis Education Association. Nichols showed Kendall the report from Stevens. Nichols raised for the first time the alleged switching of another student, Juanita Watkins. At the end of the conference, Nichols suspended Kendall. Nichols filed a report with Superintendent John P. Freeman recommending dismissal.

The Superintendent discharged Kendall on March 11, 1976. The stated bases for

---

1. The record states Ms. Nichols' name to be "Annie." The district court reports her name as "Thelma."

dismissal were Kendall's violations of Board policy by her use of corporal punishment and her failure to report the accidents. Freeman advised Kendall that she could file a grievance according to the collective bargaining agreement between the Board and the Memphis Education Association. Kendall filed a grievance, but it was dismissed at the second step for filing the appeal one day late.[2] The Superintendent denied Kendall's request for a full hearing before the Board.[3]

The episode generated much coverage in the news media. Much publicity resulted from persons acting in support of the teachers. Other publicity arose from state court proceedings against Kendall, both civil and criminal, and the tenure hearing for Woods. Kendall did not contend, or present any evidence, that the Board voluntarily and deliberately released any information about the teachers, other than as required by law.[4]

## II.

Kendall alleges that the Board deprived her without due process of law of a property right in her employment contract and in renewal of the contract. Kendall also claims that she was deprived, without due process of law, of a liberty interest in practicing her profession, in preserving her reputation, and in maintaining an accurate personnel file. Finally, she alleges that the Board violated her right to procedural due process before dismissal.

The district court held that Kendall had a property right limited to the one-year contract and that this property right had been terminated without due process. The district court held that Kendall failed to prove a deprivation of a liberty interest because most of the publicity was favorable and had been generated by her supporters. The district court did not make any findings on whether the denial of procedural due process itself injured Kendall.

## III.

### A. Property Right

■ The district court correctly concluded that Kendall had a property right in her one-year employment contract. The contract did create a legitimate expectation of entitlement, and she could only be dismissed for causes stated in the contract. Therefore, the mid-term termination of her contract must be accompanied by due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brown v. Bathke*, 566 F.2d 588 (8th Cir. 1977).[5]

■ On the other hand, Kendall, as a probationary or nontenured teacher, could be discharged without notice at the end of the contract term for any or no reason, as long as the reason was not constitutionally impermissible. *Gibson v. Butler*, 484 S.W.2d 356 Tenn. (1972); *Shannon v. Board of Education*, 199 Tenn. 250, 286 S.W.2d 571 (1956). Consequently, she did not possess a property right in the renewal of her teaching contract and due process need not at-

---

2. The first step of the grievance procedure involved consideration by Holmes. The second stage would have been before Stevens. The third, and final step for Kendall, would have involved the Director of the Division of Labor Relations.

   Kendall's appeal to the Superintendent to waive the one-day delay in beginning the second step of the grievance procedure was rejected. The Superintendent did offer Kendall a hearing before the Assistant Superintendent of Personnel Services. The Assistant Superintendent had received the reports from the other administrators and had drafted the letter of discharge for the Superintendent.

3. Woods, as a tenured teacher, did receive a full hearing before the Board. Tenn.Code Ann. § 49–1416. Kendall testified at this hearing, but her conduct was not considered. The Board discharged Woods.

4. Tennessee law required the tenure hearing to be public. Tenn.Code.Ann. § 8–4401 *et seq.*; *Dorrier v. Dark*, 537 S.W.2d 888 (Tenn.1976).

5. The Board may suspend a teacher immediately upon learning of very serious misconduct, such as conduct which threatens the safety of students, and then later provide the teacher with adequate procedural safeguards. *Newman v. Board of Education*, 594 F.2d 299 (2d Cir. 1979).

tend the Board's decision of nonrenewal. *Graves v. Duganne*, 581 F.2d 222 (9th Cir. 1978).

## B. Liberty Interest

■ Kendall, like all persons, has a liberty interest in preserving her "good name, reputation, honor or integrity." *Board of Regents v. Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. The Board's charge that Kendall participated in deliberately abusing her students, or at least covered up their abuse by failing to report the burns, does call into question her reputation in a constitutional sense. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980); *Harper v. Blumenthal*, 478 F.Supp. 176, 186 (D.D.C.1979). More than the mere fact of her discharge is public knowledge. *Compare Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Lieberman v. Gant*, 474 F.Supp. 848 (D.Conn. 1979). Kendall has persistently contended that the Board's charges are false. *Compare Codd v. Vegler*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977) (per curiam). Thus, Kendall has established the presence of a liberty interest.

■ However, as the district court found, the Board did not make the charges public outside of the tenure hearing for Woods and the state court proceedings. Because the Board was required to make its charges public in these proceedings, it has not voluntarily disseminated the allegedly false information about Kendall. Therefore, the Board has not deprived Kendall of her liberty interest. *Bishop v. Wood*, 426 U.S. at 348, 96 S.Ct. at 2079; *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d at 446–47.

■ Kendall also alleges that the Board violated her liberty interest by foreclosing other employment opportunities and by maintaining an allegedly false personnel file. However, Kendall has never applied for another teaching job since her termination and has worked at other jobs. App. 75–76. Therefore, in the circumstances of this case, we hold that the Board's conduct has not foreclosed other employment oppor-

tunities from Kendall. Kendall did not establish that the Board had given her personnel file to anyone. However, it is most likely that her file would be given to other prospective employers if she sought another teaching position. Therefore, the Board has deprived Kendall of a liberty interest by maintaining an inaccurate personnel file.

## C. Due Process Procedures

■ Because Kendall held a property right in her employment contract, the Board could not terminate the contract before the state termination date without affording her due process. The Board did not provide Kendall with due process, because she was never given a fair and impartial hearing. Even if we assume a grievance procedure would satisfy the requirement for a hearing on the charges, the Board's grievance procedure was deficient because Kendall was compelled to appear before the same administrators who had investigated the incidents and recommended her dismissal. Since factfinding on the accusations was necessary, due process requires that the same administrators who investigated the matter not determine her guilt or innocence. *See Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Hortonville Joint School Dist. No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 490, 96 S.Ct. 2308, 2313, 49 L.Ed.2d 1 (1976). The meetings with the administrators during the course of their investigation do not suffice as due process hearings. The availability of future relief in state court proceedings is immaterial. Therefore, we hold that Kendall's right to procedural due process before the termination of her contract was violated.

## D. Remedy

■ Kendall has suffered two injuries for which she could receive relief: the deprivation of a contract right without due process and the denial of procedural due process itself. Kendall argues that she is entitled to reinstatement and back pay. However, this relief is not appropriate for either injury sustained by Kendall because

she did not have a property right or liberty interest which entitled her to the renewal of her contract. *Graves v. Duganne, supra.* The nonrenewal was not caused by the violation of her right to procedural due process or premised on a constitutionally impermissible reason. Therefore, the district court ruled correctly in denying reinstatement and back pay.

■■■ The Board contests the award of damages to Kendall. Kendall may be compensated for an injury resulting from the denial of procedural due process. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In *Carey,* the Supreme Court expressly declined to adopt a "per se" standard for entitlement to damages. Therefore, we hold that Kendall is not entitled to relief for the deprivation of her contract right if the Board established that she would have been discharged even if a proper hearing had been held. *Id.* at 260, 98 S.Ct. at 1050. The district court granted Kendall damages in the amount of her salary under the unpaid portion of her employment contract. Apparently, the district court ordered relief only for the deprivation of the contract right. However, no findings were made on whether or not the Board met its burden of providing that Kendall would have been dismissed even if a proper hearing had been conducted.[6] Consequently, further factfinding is necessary to justify the award of damages to Kendall.[7]

■■■ On remand, the district court should determine, if Kendall raises the issue, whether she proved any actual injury, such as lost employment opportunities or mental anguish, which was directly caused by the denial of procedural due process. Finally, because the Board did not afford Kendall a hearing to establish the truth of its accusations, all references to the charges must be expunged from Kendall's personnel file. *Brown v. Bathke,* 566 F.2d at 593.

Therefore, we vacate the judgment of the district court and remand for further factfinding on the award of damages. Because *Carey v. Piphus* was decided only a very short time before the trial, the district court may exercise its discretion in determining whether to allow the parties to submit further evidence on the issue of damages. Unless the Board grants Kendall a hearing on its accusations that she violated Board policy on corporal punishment and reporting accidents, the Board shall expunge all references to the accusations from Kendall's personnel file before dissemination. We affirm the district court's judgment of liability.

---

**6.** Once the plaintiff has established a deprivation of constitutional rights, the burden of proof shifts to the defendant to demonstrate that the deprivation of constitutional rights did not cause the plaintiff's injury. *Mt. Healthy Bd. of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Thus, after Kendall proved a violation of procedural due process, the Board bore the burden of demonstrating that her dismissal was not caused by its failure to afford her a proper hearing before the dismissal. To meet its burden, the Board must show that it had just cause for the dismissal, that is, that its charges against Kendall are true. *See Codd v. Vegler,* 429 U.S. 624, 630, 635, 97 S.Ct. 882, 885, 888, 51 L.Ed.2d 92

(1977) (per curiam) (Brennan, J., and Stevens, J., dissenting).

**7.** The attorneys for plaintiff and defendants agreed at oral argument that if this Court should find a violation of plaintiff's right to procedural due process and should further find her only remedy to be a hearing before the school board, then the school board, would pay the damages awarded by the district court rather than give plaintiff a hearing. Our remand to the district court should not be construed to prevent the parties from stipulating before the district court to the payment of damages as a final resolution of this case. In view of the attorneys' agreement before this Court, such a stipulation is encouraged.