John H. SOMMER, Plaintiff,

v.

CITY OF DAYTON, OHIO, et al., Defendants.

No. C–3–81–565.

United States District Court,
S.D. Ohio, W.D.

Dec. 27, 1982.

Order Vacating Portion of Prior Decision
Jan. 14, 1983.

Dwight D. Brannon, Michael T. Hall, Dayton, Ohio, for plaintiff.

J. Anthony Sawyer, City Atty., Dayton, Ohio, for defendants.

RICE, District Judge.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FIRST CAUSE OF ACTION; SECOND CAUSE OF ACTION DISMISSED; JUDGMENT TO BE ENTERED IN FAVOR OF THE DEFENDANTS; TERMINATION ENTRY

This matter comes before the Court upon a motion (Doc. # 19) by the Defendants to dismiss or for a judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(b)–(c), or, in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons stated below, the Court will treat said motion as one for summary judgment with respect to the first cause of action in the complaint, finds same well taken and, accordingly, sustains same in its entirety. The second cause of action in the complaint, invoking this Court's pendent jurisdiction as to certain state law claims, is dismissed.

## I. INTRODUCTION

Plaintiff John H. Sommer filed suit in this Court on November 12, 1981, naming eight defendants: the City of Dayton, then Mayor James McGee, four members of the Dayton City Commission (Messrs. Zimmer, Dixon, Orick and Ms. Roach), Earl Sterzer, Dayton City Manager, and Ms. Cora Huguely, a City of Dayton employee and Director of the City of Dayton Convention and Exhibition Center. Complaint, ¶¶ 4–7. Plaintiff was employed as Superintendent of Operations at the Convention and Exhibition Center from May 12, 1980, until he was terminated effective October 9, 1981. ¶¶ 3, 9.

In the first cause of action in the complaint, Plaintiff alleged that he was terminated without a hearing, in violation of § 100 of the Dayton City Charter, § 8.03 of the City of Dayton Personnel Policies and Procedures, and the Fifth and Fourteenth

Amendments to the United States Constitution. ¶¶ 8–17. In the second cause of action, Plaintiff alleged that Defendant Huguely made "false and misleading" statements, both orally and in writing, which "wrongfully caused Defendant City of Dayton to terminate its employment relationship with Plaintiff." ¶¶ 19–23. Plaintiff sought monetary and other relief under both causes of action. Plaintiff alleged that Defendants had violated 42 U.S.C. §§ 1983, 1985, and 1988, ¶¶ 1, 15, and invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, and the Court's pendent jurisdiction.

Defendants initially filed a motion to dismiss (Doc. # 10), but later filed a motion (as noted above) to dismiss, for a judgment on the pleadings, or for summary judgment, which incorporated by reference the previously filed motion to dismiss. *See,* Defendants' Motion to Dismiss or, In the Alternative, for Judgment on the Pleadings or, In the Alternative, for Summary Judgment. (Doc. # 19, p. 1 n. 1.) Accordingly, the Court finds the previously filed motion to be moot and, therefore, will not rule upon same. In addition, the Court deems it appropriate to treat the pending motion as one for summary judgment, Rule 12(b), since the parties have filed, and have asked the Court to examine, various Rule 56 materials outside of the pleadings.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS SUSTAINED ON FIRST CAUSE OF ACTION; SECOND CAUSE OF ACTION DISMISSED

Under Rule 56, Defendants' motion for summary judgment can only be sustained when the movants conclusively demonstrate, based on the pleadings, affidavits, and other material on record, that there exists no genuine issue of material fact, all evidence and inferences drawn therefrom having been construed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Board of Education v. Pico,* —— U.S. ——, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *Atlas Concrete Pipe, Inc. v. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). With these standards in mind, the Court considers the grounds advanced in support of said motion.

At the outset, the Court notes that both Plaintiff and Defendants characterize the first cause of action as a claim for invasion of federal constitutional rights, primarily cognizable under 42 U.S.C. § 1983, and characterize the second cause of action as a claim for tortious interference with an employment contract, cognizable under the law of Ohio and this Court's pendent jurisdiction.

Defendants have raised a number of defenses in support of their argument that summary judgment, in their favor, is appropriate with regard to both causes of action. Two of those defenses, to wit: that Plaintiff has neither a constitutionally protected "property" nor constitutionally protected "liberty" interest in continued employment with the City of Dayton, are dispositive, and the other contentions need not be addressed at length by this Court.

### A. PROPERTY INTEREST

Plaintiff argues that he had a "property" interest in his position at the Dayton Convention Center, which position could only be terminated, pursuant to the Fourteenth Amendment, with certain due process protections. He claims that such protections, derived from both the due process guarantee of the Fourteenth Amendment *and* pertinent state law he alleges were not afforded him.[1]

---

1. As indicated in the text, Defendants appear to characterize Plaintiff's "property" claim as one for "continued employment," while Plaintiff alleges that the "termination and denial of a hearing" deprived him of due process. Complaint, ¶ 15. Thus, Plaintiff apparently argues that Defendants failed to follow their own procedures, that the procedures they did follow

(and/or perhaps should have followed) were constitutionally inadequate, and that he should not have been terminated without cause. It is somewhat doubtful that the first theory states a federal due process claim. *See, Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980). On the other hand, the latter theories state viable federal claims for denial of due process. *See,*

The Supreme Court indicated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. Subsequently, in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court indicated that while a property interest in continued employment could be created by "ordinance or by an implied contract . . . *the sufficiency of that claim of entitlement must be decided by reference to state law.*" *Id.* at 344, 96 S.Ct. at 2077, (emphasis added). *Accord, Newsom v. Vanderbilt University,* 653 F.2d 1100, 1116–17 (6th Cir. 1981); *Lacy v. Dayton Board of Education,* 550 F.Supp. 835 at 840 (S.D.Ohio 1982).

As noted in his complaint, Plaintiff argues that § 100 of the Dayton City Charter and/or § 8.03 of the City of Dayton Personnel Policies and Procedures constitute the "rules and understandings," *Board of Regents v. Roth, supra,* that "he would not be terminated without cause." Plaintiff's Memorandum Contra, Doc. # 21, p. 4.

Section 100 of the Dayton City Charter provides that:

> An employee shall not be discharged or reduced in rank or compensation until he has been presented with reasons for such discharge or reduction, specifically stated in writing, and has been given an oppor-

tunity to be heard in his own defense. The reason for such discharge or reduction and any reply in writing thereto by such employee shall be filed with the Board.

(Verified Exhibit B attached to affidavit of Earl Sterzer, Doc. # 19). The "Civil Service" provisions of the Charter divide employees "into the unclassified and the classified service." § 95. As Plaintiff concedes, Plaintiff's Memorandum Contra, Doc. # 21, p. 1, Plaintiff, as the head of the division of a department, under § 95(1)(c) of the Charter, is an "unclassified" employee.

Section 100 only refers to "employees" in general, and does not explicitly limit its protections to either classified or nonclassified employees. The parties dispute whether Plaintiff was terminated in accordance with the procedures of said provision. However, Defendants argue that, relying on a reading of the Charter as a whole, as well as two unpublished opinions of the Ohio Court of Appeals [2] interpreting the Charter, *City ex. rel. Harker v. Dayton,* No. 5766 (Mont.Cty.Ct.App.1978); *Johnson v. Dayton,* No. 7184 (Mont.Co.Ct.App.1981), Section 100 only applies to classified employees.

Defendants' arguments are well taken. It is true, as Plaintiff points out, that the aforementioned unpublished opinions do not address the scope of § 100 of the Charter. However, they do set out the generally accepted proposition that "there is no condition upon removal" for employees in the unclassified service, *Harker, supra,* slip op. at 23, and that such employees "can be summarily discharged by the City Manager, and the preferment of charges is unnecessary." *Johnson, supra,* slip op. at 4. Since the present issue regarding § 100 has, apparently, never been authoritatively addressed by an Ohio Court, an understanding of state law in general may aid in interpreting the Charter. *Cf. Bishop v. Wood, supra,*

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).

**2.** Copies of the opinions are attached to Docs. # 10 and 19. Unpublished opinions of Ohio lower courts may be cited where they are "rea-

sonably widely" distributed, and remain unchanged by a decision of the Ohio Supreme Court. *Keener v. Ridenour,* 594 F.2d 581, 586 (6th Cir.1979).

426 U.S. at 345–46, 96 S.Ct. at 2077–78 (understanding of North Carolina law aided lower courts in interpreting ordinances not authoritatively construed by a North Carolina court).

■ Moreover, the unpublished opinions indicate that this Court's construction of the City Charter should be informed by the "language and logic" of same, with the object of construing it "in its entirety to achieve its general and complete public purpose." *Harker, supra,* slip op. at 5–6. If possible, separate provisions of a city charter should be harmonized so as to stand together. *Id.* at 14. *See also, Benjamin v. City of Columbus,* 104 Ohio App. 293, 148 N.E.2d 695 (Franklin Cty.), *aff'd,* 167 Ohio St. 103, 146 N.E.2d 854 (1957), *cert. denied,* 357 U.S. 904, 78 S.Ct. 1147, 2 L.Ed.2d 1155 (1958); 21 O.Jur.3d *Counties, Townships and Municipal Corporations,* § 730 (1980).

■ Construing § 100 of the Charter with these standards in mind, as well as the law in general regarding unclassified employees, the Court concludes that said provision does not apply to unclassified employees such as Plaintiff. A contrary interpretation would, of course, conflict with the general understanding under Ohio law concerning the status of unclassified employees, to wit: that they can be removed summarily and without preferment of charges. More importantly, a contrary interpretation of § 100 would conflict with the meaning of § 48(b) of the charter. The latter section provides that the City Manager shall

appoint and, except as herein provided, remove all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this charter.

Thus, § 48(b) expressly provides that the City Manager can remove *classified* employees subject to the civil service provisions (§§ 93–107 of the Charter), suggesting that *unclassified* employees can be removed without being subject to § 100 or any other civil service provisions in the charter.

In short, the Court agrees with Defendants that the

argument that § 100 can be read by itself, without any reference to the powers granted to the City Manager by § 48 and the Court of Appeals rulings in the *Harker* and *Johnson* cases, is untenable.

Defendant's Motion, Doc. # 19, p. 12.[3]

■ Plaintiff also argues that § 8.03 of the City of Dayton Personnel Policies and Procedures creates a property interest in a termination without cause.[4] That provision, captioned "Complaint Procedure for Management and Mid-Management Employees," provides, in pertinent part, that

When a Management or Mid-Management level employee has a complaint/appeal, the following procedure is available

. . .

3. In the event that the matter is not resolved to the satisfaction of the employee at the previous level, it will be the responsibility of the employee to refer the complaint/appeal to the City Manager within five (5) work days after receipt of the Department Director's reply. The City Manager or his/her delegate will hear and reply to the complaint/appeal within five (5) work days, and the decision reached at this level will be final.

(Verified Exhibit A attached to affidavit of David B. Stinson, Doc. # 19).

Defendants argue that § 8.03 simply does not apply to a discharge of a nonclassified employee which, by its very nature, is not appealable. Moreover, they argue that even if § 8.03 does apply to the discharge, Plaintiff failed to "refer the complaint/ap-

---

**3.** The *Johnson* court also reached the conclusion that § 48(b)—or, apparently, any other provision of the city charter—confers no federal constitutionally protected property interest. *See, Johnson, supra,* slip op. at 4 (citing, *inter alia, Bishop v. Wood, supra*).

**4.** Again, the nature of the federal due process claim Plaintiff is positing is not entirely clear. *See,* Footnote 1, *supra.*

peal to the City Manager within five (5) work days after receipt of the Department Director's reply," as required by the provision.

Both arguments advanced by Defendants are well taken. First, § 8.03 makes no reference to discharges or removals, only to "complaints." The provision defines a complaint as follows:

1. A complaint is a dispute between the complainant and higher management concerning an alleged conflict in the interpretation of policy and/or procedure.

2. Disciplinary action shall not be the basis of a complaint.

This language strongly suggests that a discharge is a decision qualitatively different from a mere "dispute between the complainant and higher management," and would not be covered by § 8.03.[5] Second, even if § 8.03 does apply to a discharge, Plaintiff failed to appeal the discharge within five days. The record indicates that Mrs. Huguely sent a letter, dated September 14, 1981, informing Plaintiff of his discharge, effective October 9, 1981.[6] Mr. Sterzer avers that Plaintiff did not appeal the decision in said letter within five days. Affidavit of Earl Sterzer, Doc. # 19, Ex. B, ¶ 10. In contrast, the record indicates that Plaintiff discussed the termination with Mr. Sterzer at a brief meeting on September 10, 1981, and later submitted a "Complaint/Appeal contesting his termination" on October 9, 1981. Verified Complaint, Doc. # 1, ¶ 12; Deposition of John H. Sommer, at pp. 53–56; Deposition of Earl E. Sterzer, at pp. 9–12. There is no evidence to contradict Mr. Sterzer's statement that Plaintiff failed to appeal within five days of receiving the aforementioned letter from Mrs. Huguely (although the receipt date, if any, is nowhere explicit in the record).

Accordingly, based on the aforesaid, neither § 100 of the City Charter nor § 8.03 of the City Personnel Policies and Procedures creates a "property" interest running toward Plaintiff, the deprivation of which could be subject to redress in a federal court under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

### B. LIBERTY INTEREST

■ In the first cause of action in the complaint, Plaintiff alleged, *inter alia,* that the "denial of [his] rights has caused damage and injury to his reputation...." ¶ 16. In addition to advocating the existence of a property interest, Plaintiff argues that his "good nmae (sic), reputation, and integrity within his profession are at stake," and that a "constitutionally protected liberty interest in these qualities exists...." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Doc. # 13, p. 3.

However, as Defendants observe, the Supreme Court's decision in *Bishop v. Wood, supra,* disposes of Plaintiff's liberty interest claim. That case, in a similar manner to the herein case, involved the dismissal of a city worker pursuant to an ordinance which authorized discharge of an employee "whose work is not satisfactory." *Id.* at 344, 96 S.Ct. at 2077. The Plaintiff therein claimed that he had been deprived of a constitutionally protected liberty interest since the reasons given for the discharge damaged his reputation and were false. *Id.* at 347, 96 S.Ct. at 2078. The Court concluded that no deprivation occurred when a public employee is discharged "whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge." *Id.* at 348, 96

---

**5.** This conclusion is underscored by the letter of termination, dated September 14, 1981, which was signed by Ms. Huguely *and* signed and "approved" by Mr. Sterzer. (Exhibit B attached to affidavit of Earl E. Sterzer, Doc. # 19). If § 8.03 applied to a discharge, it would seem superfluous for the City Manager to approve that initial decision, if he would later, under § 8.03, hear an "appeal" of same.

**6.** It is also noteworthy that Plaintiff received two (partially) adverse job evaluations (attached to affidavit of Cora M. Huguely, Doc. # 19, Ex. C), which were probably appealable under § 8.03. Plaintiff concedes that he made no such appeal. Deposition of John H. Sommer, at p. 42. Thus, it is clear that Plaintiff is basing his federal claim entirely on his job termination.

S.Ct. at 2079. In this regard, the Court also pointed out that "the asserted reasons for the City Manager's decision were communicated orally to the petitioner in private and also were stated in writing. . . ." *Id.* Finally, the Court addressed the petitioner's claim that the reasons for his discharge were false:

> The truth or falsity of the City Manager's statement determines whether or not his decision to discharge the petitioner was correct or prudent, but neither enhances nor diminishes petitioner's claim that his constitutionally protected interest in liberty has been impaired. A contrary evaluation of his contention would enable every discharged employee to assert a constitutional claim merely by alleging that his former supervisor made a mistake. The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Id.* at 349–50, 96 S.Ct. at 2079–80 (footnote omitted).

Plaintiff's discharge is on all fours with the facts in *Bishop v. Wood.* Both cases involve state law which, in effect, permits termination at will. Nor does Plaintiff herein allege or demonstrate that the reasons for his termination were made public. *Cf.* Deposition of John H. Sommer at pp. 71–72 (oral reasons for discharge made only to Plaintiff). Finally, this case is devoid "of any claim that the public employer was motivated by a desire to curtail or to penal-

ize the exercise of an employee's constitutionally protected rights. . . ." *See generally, Kendall v. Board of Education,* 627 F.2d 1, 5 (6th Cir.1980).

Accordingly, Plaintiff was not deprived of a "liberty" interest subject to the protection of the due process clause under the Fifth and Fourteenth Amendments.

## C. REMAINING CAUSES OF ACTION

Plaintiff's failure to demonstrate the existence of a constitutionally protectable "property" or "liberty" interest disposes of his claim under 42 U.S.C. § 1983. In addition, Plaintiff has not alleged any facts demonstrating a class-based invidiously discriminatory animus on the part of Defendants. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Browder v. Tipton,* 630 F.2d 1149 (6th Cir.1980). Plaintiff can thus state no claim under §§ 1985 & 1988. Accordingly, summary judgment, in favor of the Defendants, is appropriate, in its entirety, with respect to the first cause of action.

Relying on *Anderson v. Minter,* 32 Ohio St.2d 207, 291 N.E.2d 457 (1972), Defendants argue that summary judgment is also appropriate with respect to the state law claims in the second cause of action. However, the Court need not pass on this point, since, at this posture of the litigation, dismissal of the second cause of action is appropriate.

As noted above, this Court's pendent jurisdiction is invoked with regard to the second cause of action in the complaint. Under the doctrine of pendent jurisdiction, this Court has the *power* to hear state law claims if they would ordinarily be raised with a federal claim in one judicial proceeding. However, the Court has the *discretion* to decline to exercise that power in every case, such as when all federal claims have been dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *J.P. v. DeSanti,* 653 F.2d 1080, 1086 (6th Cir.1981). In such circumstances, "the state claim may be dismissed without prejudice

and left for resolution to state tribunals." *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139.

█ With the dismissal, in their entirety, of Plaintiff's federal claims, such circumstances obtain herein. Significantly, the Court notes that Plaintiff's state law claim—tortious interference with an employment contract—does not appear to be barred by the relevant Ohio statute of limitation, Ohio Rev.Code § 2305.09(D). That provision states that actions for "an injury to the rights of the plaintiff not arising on contract nor enumerated" in other parts of the Revised Code shall be governed by a four year statute of limitation. Plaintiff's action herein falls under this provision, and accrued somewhat over a year ago, well within the statute of limitations. Thus, dismissal of the state law claim will not prejudice Plaintiff. *See, Pharo v. Smith,* 625 F.2d 1226, 1227 (5th Cir.1980) (per curiam) ("That a plaintiff's state law claims will be time-barred if dismissed is certainly a factor, if not a determinative factor, a district court should consider in deciding whether to maintain jurisdiction over pendent state claims once the federal claims have been resolved.") For these reasons, the second cause of action will be, and hereby is, dismissed.

## III. CONCLUSION

Based on the aforesaid, Defendants' motion for summary judgment with respect to the first claim for relief in the complaint is sustained. The second claim for relief is dismissed, this Court having declined to exercise its pendent jurisdiction with respect to the Plaintiff's state law claims.

Judgment is to be entered in favor of the Defendants with respect to the first claim for relief.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

### ORDER VACATING PORTION OF PRIOR DECISION

In a decision and entry in the captioned cause filed on December 27, 1982, this Court entered judgment, in favor of the Defendants, on Plaintiff's first cause of action, and dismissed the second cause of action. By letter dated December 30, 1982, Defendants' counsel informed the Court that he had attached a version of § 8.03 of the Personnel Rules and Regulations to the motion for summary judgment, which was not in force at the time of Plaintiff's discharge. The version in force at the relevant time (attached to said letter) is identical in all pertinent parts, with the exception that a "complaint" is not defined. The Court briefly referred to the latter provision in its earlier entry, at p. 7. However, the Court finds that its conclusions regarding § 8.03 remain the same, even if said provision is not considered.

Accordingly, the Court vacates that portion of the earlier decision and entry referring to a definition of a "complaint" in § 8.03. Said decision is reaffirmed in all other respects.