Vincent **IRIZARRY**, Jr., Plaintiff,

v.

**CLEVELAND PUBLIC LIBRARY, Marilyn Mason, etc., Larry Novotny, etc., Defendants.**

No. C87–343.

United States District Court, N.D. Ohio, E.D.

Oct. 31, 1989.

**358**

Susan Morgenstern, Harold L. Williams, Cleveland Legal Aid Society, Cleveland, Ohio, for plaintiff.

John T. Corrigan, Pros. Atty., Timothy J. Kollin, Asst. Pros. Atty., Howard A. Levy, Maynard A. Buck, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendants.

## MEMORANDUM OF OPINION RE: GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KRENZLER, District Judge.

The above-captioned case was initiated by the plaintiff [1], Vincent Irizarry, Jr. ("Irizarry"), against the defendants, Cleveland Public Library ("Library"), Marilyn Mason ("Mason") [2] and Larry Novotny ("Novotny") [3]. The plaintiff, in the complaint, alleges that the discharge from his employment with the Library was in violation of 42 U.S.C. § 1983 ("§ 1983") and the due process clause of the Fourteenth Amendment to the Constitution of the United States ("Fourteenth Amendment"). Specifically, the plaintiff claims that he was discharged without a pretermination hearing, in violation of his procedural due process rights. The plaintiff claims that this violation was pursuant to the custom and practice of the Library. Additionally, the plaintiff sets forth a pendent state claim for breach of employment contract. Following completion of discovery, the plaintiff filed a motion for summary judgment. The defendants filed briefs in opposition to the motion. For the following reasons, this Court shall grant the plaintiff's motion for summary judgment on the claim brought pursuant to § 1983. The Court shall dismiss the pendent state claim, without prejudice, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## I.

The undisputed facts are as follows. The Cleveland Public Library Personnel Manual ("Personnel Manual"), which was in effect at all relevant times to this case, has as its purpose, to set "forth the personnel policies of the Library as approved by the Library Board" and to "be used as the basis for personnel administration." Included within the Personnel Manual are provisions specifying the procedure used in terminating tenured employees.[4]

> Every full and part time regular employee, at the end of his/her probationary period, shall be assured continuous and permanent employment (tenure) so long as his/her assigned duties are performed satisfactorily and in accordance with the policies of the Board of Trustees....
>
> 234.1—No tenured employee may be dismissed without due process, including the filing of written charges and a formal hearing before the Director (or his/her designee) at which the employee

---

1. The complaint was filed following this Court's granting the plaintiff's application to proceed *in forma pauperis*.

2. Defendant Marilyn Mason was sued individually and in her capacity as Director of the Cleveland Public Library.

3. Defendant Larry Novotny was sued individually and in his capacity as Employment Supervisor of the Cleveland Public Library.

4. It is undisputed that Irizarry was a tenured employee with the Library at the time of his termination. *See* Personnel Manual, Sections 225 and 234.

shall have the right to Legal Counsel. The ruling which results from the hearing shall be in writing, and may be appealed to the Board of Trustees. This procedure may be halted at any time by the resignation of the employee concerned.

234.2—Circumstances which are sufficient cause for dismissal must be clearly evident and substantiated. They shall include, but not be limited to, the following: ... physical violence against another individual in the Library; ....

The plaintiff was employed as a custodian with the Library beginning on November 2, 1981, until he was discharged from his position on September 26, 1986. Accordingly, the plaintiff was a tenured employee with the Library.[5] On September 26, 1986, an altercation between Norbert Harnegie ("Harnegie"), the plaintiff's supervisor, and the plaintiff occurred.[6] Following the altercation, Harnegie proceeded to the office of defendant Novotny, who was the Employment Supervisor for the Library at the time. Harnegie told Novotny that the plaintiff had physically assaulted him, and that although instructed to go to Novotny's office, Irizarry had refused and had left the premises.[7] Novotny immediately met with defendant Mason and Norman D. Holman ("Holman"), Director and Deputy Director of the Library, respectively. At this meeting, the decision was made to terminate Irizarry's employment with the Library. A letter was written by Novotny, dated September 26, 1986, discharging Irizarry from his employment with the Library, pursuant to Subsection 234.2 of the Personnel Manual, physical violence against another individual in the

Library.[8] Irizarry received the letter by certified mail on the following day, September 27, 1986.

It is undisputed that the decision to terminate Irizarry's employment with the Library was not only made on September 26, 1986, but also that he was in fact terminated on that date. Harnegie was the sole source of information upon which the decision to terminate Irizarry's employment was made. Neither Novotny, Holman nor Mason took any steps to obtain Irizarry's account of the altercation.[9] Written charges were not filed against Irizarry prior to the termination, nor was he notified that he had a right to a hearing prior to termination, or a right to appeal the decision to terminate his employment with the Board of Trustees.

The undisputed evidence also demonstrates that the procedures used in terminating Irizarry's employment were also used in numerous occasions prior to Irizarry's discharge.[10] Norman Holman, who was Personnel Director of the Library from approximately April 1978 to April 1983, described the procedure he used to terminate the employment of Library employees. "Generally speaking the routine was that the individual was brought into the office, a letter had been prepared. The letter was given to the individual. The individual was told why the individual was being terminated." Holman Deposition, p. 14. Joan F. Brown, Personnel Officer of the Library, stated that when discharging an employee, she had the termination letter prepared prior to the hearing. Brown Deposition, p. 129. The first contact that she had with the employee was at a meeting where the termination letter was handed to

5. *See supra,* Note 4.

6. The details of the altercation are in dispute. However, the specific facts of the dispute are not material to the present case.

7. Both Novotny and Mason testified that Harnegie's nose was bleeding when they saw him on September 26, 1986. Novotny Deposition, p. 38; Mason Deposition, p. 46.

8. The termination letter was approved by Holman prior to Novotny sending it to Irizarry. Holman Deposition, p. 40.

9. Both Novotny and Mason state that Irizarry refused to proceed to Novotny's office following the altercation. This information, as with all other information which was used as a basis for terminating Irizarry, was given to Novotny and Mason by Harnegie.

10. The depositions of Joan Brown and Holman are replete with numerous instances in which Library employees were terminated without pretermination hearings.

the employee. *Id.,* p. 132. Brown also stated that there had never been an occasion where a termination letter was prepared and an employee had been called into her office, that a termination decision was reversed. *Id.,* pp. 129–30.[11]

Several months following Irizarry's termination, a new procedure for discharging Library employees went into effect. The new procedure includes the preparation of a letter setting forth the charges against the employee, a separate hearing, and a separate termination letter. *Id.* at 32. Generally at the hearing the Personnel Officer presides with the employee being given the right to have legal counsel at the hearing.

## II.

■ In order to state a cause of action pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate that he or she was deprived of a constitutional right by a state actor, acting under color of state law. In the instant case, construing the evidence most favorably for the defendants, this Court finds that there is no material issue of fact and that the defendants violated the plaintiff's right to not be deprived of property without due process of law[12], and that said deprivation was committed pursuant to the custom and practice of the Library.

This Court, in a previous Memorandum of Opinion, addressed the issue of whether the defendant Library and its employees are state actors and whether their actions in terminating Irizarry were committed under color of state law. In Memorandum of

Opinion and Order Re: Defendants' Motion to Dismiss, August 3, 1988, this Court stated that

> [t]he Cleveland Public Library is a state actor for 42 U.S.C. § 1983 purposes. The Library is established and organized under state law as a school district library, Ohio Rev.Code Ann. §§ 3375.-14–.15 (Anderson 1985); responsibilities and permissible actions by the board of trustees are defined by state law, § 3375.40; the board of trustees is appointed by the Cleveland Board of Education which is an elected body, § 3375.15; the Library is regulated by the state library board and state regulations, § 3375.01. The Library is almost totally funded by property taxes, § 3375.17, and income taxes, §§ 5747.-46–.49 (Anderson 1986). The Library is even represented by the county prosecutor pursuant to state law, § 309.09 (Anderson 1987).

Memorandum of Opinion and Order Re: Defendants' Motion to Dismiss, pp. 3–4.[13] Accordingly, this Court hereby finds that the defendants in this case are state actors. Additionally, this Court finds that the defendants were acting under color of state law while committing the actions in the instant case.

This Court also hereby finds that the plaintiff had a property right in his continued employment. In the Memorandum of Opinion and Order Re: Defendants' Motion to Dismiss, this Court concluded that "[a] property interest in continued employment was created by the Personnel Manual...." *Id.* at 4.[14]

---

**11.** *See also* Holman Deposition, p. 18, in which Holman stated that it was his practice, as Director of Personnel to give the employee his or her termination letter on the date that he or she was called into his office. *See also* Holman Deposition, p. 69.

**12.** The defendants do not dispute that Irizarry was deprived of his employment without a pretermination hearing. *See* Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, p. 1 ("For the purpose of this motion defendants do not dispute the fact that Irizarry did not receive a pretermination hearing prior to his dismissal from the Library.").

**13.** In this Court's Memorandum of Opinion and Order Re: Defendants' Motion to Dismiss, this

Court overruled the defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

**14.** Property rights are created by independent sources other than the Constitution, such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, once a property interest has been created, it may not be taken away without due process of law as enunciated in the Constitution of the United States. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct.

Additionally, this Court hereby finds that the plaintiff was deprived of his property right in his employment without due process of law. In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that prior to depriving a person of a property interest, the person must be provided with notice and an opportunity to be heard.[15] In deciding the extent of the procedural due process rights of public employees in their continued employment, the Court stated that,

> First, the significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood.... While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.
>
> Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision.

*Id.* at 543, 105 S.Ct. at 1494. Additionally, in *Loudermill,* the Court stated that the right to a pretermination hearing is not incumbent upon a demonstration of "certain success." *Id.* at 544, 105 S.Ct. at 1494. In the event that an employer perceives the employee as a significant threat to the workplace, the employer can suspend the employee, but must to so with pay. *Id.* at 544–45, 105 S.Ct. at 1494–95.

In the present case, this Court finds that the plaintiff was not given the proper pretermination notice and opportunity to be heard as mandated by the due process clause and as enunciated in *Loudermill.* The defendants made no effort to contact the plaintiff prior to his termination. The

fact that Harnegie told Novotny that Irizarry had refused to proceed to Novotny's office following the altercation, can in no way be construed as a waiver of the plaintiff's right to due process. Both defendants Novotny and Mason made the decision to terminate the plaintiff without any effort on their part to notify the plaintiff of the charges leveled against him or to afford the plaintiff an opportunity to respond to the charges. The fact that the defendants felt uneasy in keeping the plaintiff on the worksite prior to the pretermination hearing is certainly no excuse for their failure to provide the plaintiff with due process. The Supreme Court in *Loudermill* provided the plaintiffs with the solution: suspend the plaintiff *with pay.* This the defendants chose not to do. Accordingly, this Court finds that defendants Novotny and Mason did violate the plaintiff's procedural due process rights and, hence, 42 U.S.C. § 1983, by depriving the plaintiff of a pretermination hearing. Accordingly, this Court shall enter judgment for the plaintiff and against the defendants, Novotny and Mason, in their individual capacities.

Additionally, this Court finds that the deprivation of plaintiff's procedural due process rights was committed pursuant to the practice and custom of the Library. Although the Personnel Manual contains procedures for discharging employees, the custom and practice was such as to not to give the employees the pretermination procedures as set forth in the Personnel Manual. "[A] policy or custom may be found in ... 'persistent ... practices of ... officials ...'" *Milligan v. City of Newport News,* 743 F.2d 227, 229 (4th Cir.1984) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). There is ample undisputed evidence that the standard practice of the

---

1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring)).

**15.** Specifically, in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court stated that "[t]he essential requirements of due process, ... are notice and an opportunity to respond.... The opportunity to present reasons,

either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to oral and written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495.

362

officials of the Library was to discharge employees without due process of law. *See supra.* Accordingly, this Court shall enter judgment for the plaintiff against the defendant Library.[16]

III.

■ The major issue in dispute in the present case is the amount of damages due the plaintiff from the defendants for the deprivation of plaintiff's property right without due process of law, in violation of 42 U.S.C. § 1983. The plaintiff is requesting injunctive relief, reinstatement of the plaintiff to his former position with the Library, back pay from the time of his discharge, punitive damages, attorney fees and costs. The defendants, however, argue that even if this Court finds that they violated the plaintiff's procedural due process rights, the plaintiff is only entitled to nominal damages because the plaintiff was rightfully terminated and, hence, can show no actual injury which was proximately caused by the constitutional deprivation.

The issue of the proper amount of damages to be awarded in cases in which the plaintiff was deprived of property or liberty without due process of law was ad-

dressed by the United States Supreme Court in *Carey v. Phiphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In *Carey*, two students were expelled from school without procedural due process. The Court of Appeals held that the students were entitled to substantial nonpunitive damages solely because of the deprivation of their due process rights. The Court of Appeals held that the students were entitled to these damages even if it was eventually shown that the suspensions were justified.[17] The Supreme Court reversed, holding that the students, although entitled to nominal damages because of the violation of their procedural due process rights, were not entitled to substantial nonpunitive damages absent a showing that they had suffered *actual injury* proximately caused by the constitutional violation. The Court concluded that,

[b]y making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to

**16.** A suit brought against an official in their official capacity is in reality a suit brought against their employer, in the present case against the Library. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Accordingly, to find an official liable in his or her official capacity, a plaintiff must find that the violation was conducted pursuant to the custom or policy of the employer. *Id.* at 166, 105 S.Ct. at 3105. A suit brought against an official individually or in his or her personal capacity seeks to "impose personal liability upon a government official for actions he [or she] takes under color of state law." *Id.* at 165, 105 S.Ct. at 3104. To "establish personal liability in a § 1983 action it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166, 105 S.Ct. at 3105.

Accordingly, this Court shall enter judgment for the plaintiff and against the defendant Library and the defendants Mason and Novotny in their individual capacities. This Court shall not enter judgment for the plaintiff and against the defendants Mason and Novotny in their

official capacities, as this has the same legal effect as this Court entering judgment against the Library.

This Court notes that although it is axiomatic that *respondeat superior* does not exist in actions brought pursuant to 42 U.S.C. § 1983, the effect of this Court finding that the Library had a policy of depriving its employees of their due process rights, gives the same effect as if *respondeat superior* does apply in this case. Upon a finding that the action was done pursuant to a policy of the Library, the Library became responsible for the actions of its employees. That the employees in this case were policymakers is immaterial to this proposition.

**17.** The Supreme Court, in *dicta,* stated that it agreed with the holding of the Court of Appeals which held that if the suspensions were proved to be justified, the students were not entitled to damages arising out of the suspension. *Carey v. Phiphus,* 435 U.S. 247, 260, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). The Supreme Court commented, in footnote, that "a few courts appear to have taken a contrary view in cases where public employees holding property interests in their jobs were discharged with cause but without procedural due process." *Id.* at 260, n. 15, 98 S.Ct. at 1050, n. 15.

compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

*Id.* at 266, 98 S.Ct. at 1054.[18]

In *Kendall v. Board of Education,* 627 F.2d 1 (6th Cir.1980), the Sixth Circuit Court of Appeals addressed the issue of damages where a teacher had been deprived of a property interest in her contract right in employment without procedural due process. The Sixth Circuit Court of Appeals, citing *Carey v. Phipus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), found that the plaintiff was "not entitled to relief for the deprivation of her contract right if the Board established that she would have been discharged even if a proper hearing had been held." *Kendall,* 627 F.2d at 6.

Subsequent to the opinions in *Carey* and *Kendall,* the Supreme Court issued its opinion in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill,* the Court explicitly reiterated the position that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Court, in *Loudermill,* although finding that a public employee cannot be properly discharged without notice and an opportunity for a hearing, did not state what the remedy should be when the right is denied a public employee. Courts which have addressed the issue have not been in agreement as to whether the Court's opinion in *Loudermill* overruled the Court's dicta in *Carey* regarding the proper remedy for deprivation of property rights in public employment without due process of law.

Several courts have held that *Loudermill* did not affect the general damages rules stated in *Carey,* nor has it changed those rules' application to deprivations of property interests in public employment without procedural due process. In *Hogue v. Clinton,* 791 F.2d 1318 (8th Cir.1986), the Court stated that a plaintiff is entitled to actual damages for deprivation of a procedural due process right only if he "can establish that he suffered actual injury due to the failure to hold a pretermination ... hearing." *Id.* at 1323. Additionally, in *Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251 (7th Cir.1985), the Court held that even though a public employee was deprived of her property right in her employment without procedural due process, she was entitled only to nominal damages.

> Where there has been a justified deprivation of a protected interest through deficient procedures, the injury caused by the justified loss is not properly compensable under section 1983. *Carey v. Piphus,* 435 U.S. 247, 263, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). In the case before us, there has been a thorough judicial inquiry into the reasons for Patkus's dismissal. The defendants have presented sufficient evidence to prove that she would have been discharged even if proper predeprivation procedures had been employed, and Patkus has presented no proof of particularized injury arising only from the denial of due process. Without proof of actual injury, the denial of procedural due process is actionable only for nominal damages. *Id.* at 266, 98 S.Ct. at 1053.

Other courts addressing the issue of the proper remedy for deprivation of property rights in employment without procedural due process have arrived at a different result. Specifically, the Sixth Circuit Court of Appeals, in *Duchesne v. Williams,* No. 86–1017 (6th Cir. June 16, 1987), *vacated*

---

**18.** The Court, in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), looked to tort law for fundamental damages rules. *See Id.* at 257–58, 98 S.Ct. at 1048–49,

> [o]ver the centuries the common law of tort has developed a set of rules to implement the principle that a person should be compensat-

ed fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.

(Citations omitted).

*on other grounds,* 849 F.2d 1004 (6th Cir. 1988), directly addressed the issue of whether the Supreme Court intended to "contravene or undercut the dicta from *Carey* that became the law of [the Sixth Circuit] in *Kendall.*" *Id.* The Court first found that "[i]t has been more common . . . to read *Loudermill* as not only prescribing what process is due, but as altering the law on what relief a plaintiff is entitled to once a denial of due process is demonstrated." *Id.* The Sixth Circuit Court of Appeals specifically approved of the analysis of Chief Judge Lay, in his opinion, concurring in part and dissenting in part, in *Hogue v. Clinton,* 791 F.2d 1318, 1325 (8th Cir.1986). Judge Lay first distinguished the deprivation of a property right in employment without due process of law from the situation in *Carey,* the suspension of two students from school without a presuspension hearing. Judge Lay found the suspension from school scenario more akin to that of a deprivation of a liberty interest. Accordingly, the Judge did not find the damages rules as set forth in *Carey* to be applicable to an employment deprivation case. *Id.* at 1327–28. Second, Judge Lay found that the language in *Loudermill* mandated the proper remedy for a deprivation of a property right in employment without procedural due process to be reinstatement pending a pretermination hearing and the awarding of backpay. Quoting *Loudermill,* Judge Lay concluded that the requirement that an employee be given some kind of hearing prior to termination

> clearly imposes in public employers an obligation to retain an employee on the payroll until a pretermination hearing satisfying the *Loudermill* notice and hearing requirement is conducted. Significantly, the Court observed 'in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending *with pay.*' *Loudermill,* [470 U.S. at 545–45, 105 S.Ct. at 1495] (footnote omitted, emphasis added).

*Hogue v. Clinton,* 791 F.2d at 1328 (Lay, Chief Judge, concurring in part and dissenting in part). The Sixth Circuit Court of Appeals, in *Duchesne v. Williams,* No. 86-

1017 (6th Cir. June 16, 1987), *vacated on other grounds,* 849 F.2d 1004 (6th Cir. 1988), affirmed the district court's granting of a new hearing and back pay. The Court found that said remedial action was proper, including the award of back pay, so as to "preserve the status quo until the new hearing could be held and to encourage the employer to cooperate in holding that hearing promptly." *Id.*

This Court finds the analysis of the Court's decision in *Duchesne v. Williams,* No., 86–1017 (6th Cir. June 16, 1987), *vacated on other grounds,* 849 F.2d 1004 (6th Cir.1988), persuasive. First, the Supreme Court, in *Loudermill,* stated that a public employee was not properly discharged until he or she was given a pretermination hearing. The Supreme Court notably directed a public employer to suspend an employee who posed a threat to the workplace, *with pay,* prior to the time the pretermination hearing is held. Second, this Court notes that although the decision in *Carey* was adopted by the Sixth Circuit Court of Appeals in *Kendall* to apply to public employees who were deprived of property rights in their employment without due process of law, *Kendall* was decided prior to the Supreme Court's decision in *Loudermill.* Based on *Loudermill,* this Court finds that the proper remedy is to place the defendant in the position that the Constitution mandates he be in prior to a pretermination hearing—awaiting said hearing while receiving pay.

Finally, this Court finds untenable the proposition that an employer may, with impunity, violate an employee's constitutional rights and do so without fear of being held monetarily accountable for his or her actions. Although this Court does find it somewhat regrettable that funds must come from the public treasury to compensate an employee whose rights were violated, the basis of the Court's regret is that the employee's rights were violated. The instant case is an example of a complete lack, by the defendants, of any attempt to give the plaintiff his constitutional right of notice and an opportunity to respond. Instead, the defendants chose to summarily

discharge the plaintiff. As was stated by Chief Judge Lay, in his opinion in *Hogue v. Clinton*, 791 F.2d 1318, 1325 (8th Cir.1986) (concurring in part and dissenting in part),

> [t]o effectively bar recovery of back pay damages by the application of the *Carey* rules would make a mockery of the requirement of a pretermination hearing since, without the deterrent of a back pay award, no incentive remains for the employer to do anything more than provide only a post-termination hearing.

*Id.* at 1328.

Accordingly, this Court finds that the plaintiff is entitled to reinstatement to his employment with the Library pending a pretermination hearing. The plaintiff shall receive back pay from the date of his termination, September 26, 1986. The plaintiff shall continue to receive pay until the date, if and when, the plaintiff is discharged following a pretermination hearing. This Court, finding no evidence to support an award of punitive damages, declines to award punitive damages.[19]

This Court, having determined the major outstanding issues regarding the federal cause of action, shall decline to exercise its pendent jurisdiction over the state claim of breach of employment contract, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, this Court shall dismiss the pendent state claim of breach of employment contract prejudice.

## IV.

Accordingly, this Court, for the aforementioned reasons, shall grant the plaintiff's motion for summary judgment, and enter judgment for the plaintiff, Vincent Irizarry, Jr., and against the defendants, Cleveland Public Library, Marilyn Mason, individually and in her official capacity, and Larry Novotny, individually and in his official capacity, in an amount to be determined. Additionally, this Court shall dismiss the state claim of breach of employment contract, without prejudice.

**19.** Punitive damages are available to a plaintiff in § 1983 actions, if there is evidence that the defendant or defendants acted with reckless or

## JUDGMENT ENTRY

This Court, having separately filed its Memorandum of Opinion Re: Granting Plaintiff's Motion for Summary Judgment, hereby grants plaintiff's motion for summary judgment and hereby enters judgment in favor of plaintiff, Vincent Irizarry, Jr., and against defendant, Cleveland Public Library.

IT IS ORDERED that defendant reinstate plaintiff to his prior position with the Cleveland Public Library pending a pre-termination hearing.

IT IS FURTHER ORDERED that defendant pay plaintiff his backpay from the date of his discharge at the salary and with the benefits the plaintiff would have received had he not been terminated.

IT IS SO ORDERED.

callous disregard for the plaintiff's rights or acted intentionally. *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983).