**James R. WILLIAMS, Plaintiff,**

v.

**CITY OF SEATTLE, a municipal corporation, and Patrick Fitzsimons, Chief of Police, and Jane Doe Fitzsimons, his wife, Defendants.**

**No. C83–935C.**

United States District Court,
W.D. Washington.

May 2, 1985.

Richard J. Glein, Clinton, Fleck, Glein & Linville, Seattle, Wash., for plaintiff.

Douglas N. Jewett, City Atty., Philip Mortenson, Gordon Davidson, Asst. City Attys., Seattle, Wash., for defendants.

## MEMORANDUM DECISION

COUGHENOR, District Judge.

This is a civil rights action brought by plaintiff James R. Williams, a retired police officer with the Seattle (Washington) Police Department ("SPD"), against the City of Seattle, Chief of Police Patrick Fitzsimons, and the marital community of Chief and Mrs. Fitzsimons. Plaintiff alleges that his July 3, 1980 demotion from the rank of sergeant to police officer deprived him of a property interest without due process of law, because he was not afforded a pre-demotion evidentiary hearing as provided by departmental regulations. Pursuant to 42 U.S.C. §§ 1983 and 1988, plaintiff seeks reinstatement to the rank of sergeant, back pay and corresponding retirement benefits, compensatory and punitive damages, and attorneys' fees.

## I.

■ This matter came on for trial to a jury on March 25, 1985. Viewing the evidence presented at trial in the light most favorable to plaintiff, and without assessing the credibility of the witnesses, the following facts are established.[1]

On November 30, 1979, Captain William Taylor, of the SPD Internal Investigations Section ("IIS"), received a memorandum from Assistant Chief of Police Vern Thomas, requesting an investigation of allegations that Sergeant Williams used exces-

---

1. The evidence must be considered in this fashion because this matter is before the Court on defendants' motion for judgment notwithstanding the verdict. *William Inglis & Sons Baking* *Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1026 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

sive force against a prisoner on November 11, 1979. The allegations were made by four junior officers who claimed to have witnessed all or part of the incident. Without Williams' knowledge, IIS commenced, on December 4, 1979, an investigation of the allegations. In the course of this investigation, IIS obtained statements from the alleged victim, a lay witness, and the four junior officers who had initiated the complaint. These statements supported the allegations that Sergeant Williams used excessive force.

On January 3, 1980, Sergeant Williams applied for, and was granted, a six-month disability leave from his duties due to severe "cluster headaches" he had suffered daily since October of 1979.[2] The headaches commenced quickly, without warning, and produced incapacitating pain usually lasting from 20 minutes to a few hours. After the initial intense pain dissipated, Williams often continued to suffer a dull ache or soreness of less severity. The severity and frequency of the headaches remained relatively constant before, during, and after his six-month disability leave.

Although Williams was also suffering from hypertension, insomnia, and depression, he was not significantly incapacitated during the periods of time between his cluster headache attacks. Both before and after his disability leave, he performed his official duties despite his condition. When an attack occurred while Williams was on duty, however, he was forced to curb his patrol car and wait for the episode of intense pain to pass.

Williams admits receiving notice of the pending IIS investigation on January 12, 1980, when he received a letter from Lieutenant Cary G. Parkes of IIS. This letter set forth the specific allegations concerning the November 11, 1979, incident, and informed plaintiff that statements from both civilians and officers supported those allegations. The letter also directed Williams to respond, in person or in writing, to IIS with a full statement, as required by Section 1.09.030 of the SPD *Manual of Rules and Procedures* (1980) (the *"Manual"*).[3] Williams was explicitly warned that failure to respond would be a violation subject to disciplinary action and would result in his case being submitted "as is" to department command for disposition.

Upon receipt of the letter from Lieutenant Parkes, Williams telephoned Michael Patrick, President of the Seattle Police Officers' Guild, and requested that Patrick send a letter to IIS stating that plaintiff was physically unable to respond. Due to a breakdown in communications between Patrick and another representative of the Guild, no letter was sent. Williams made no effort to confirm that Patrick had contacted IIS, and was unaware of any problem in this regard until January 24, 1980.

Despite his daily headache attacks, nothing in the record suggests that Williams was physically unable to personally telephone IIS and request additional time to respond. Undisputed testimony indicates that had he done so, IIS would have endeavored to accommodate that request. Moreover, although Williams' physician advised him not to get involved in an investigation until the headaches were controlled, Williams was physically and mentally able, on January 12, 1980, to draft a written statement and mail it to IIS as directed, but did not do so.

Had Williams responded to the allegations by January 16, 1980, his explanation

---

**2.** A factual dispute exists over whether Sergeant Williams became aware of the pending IIS investigation prior to applying for disability leave on January 3, 1980. Defendants contend that Williams was notified of the investigation on January 2, 1980, by means of an IIS memorandum delivered to Williams' station house mailbox. Williams denies ever receiving this memorandum, and contends it is merely a coincidence that he applied for disability leave the day after IIS attempted to notify him of the investigation. For purposes of the present motion, the Court accepts Williams' version of these events.

**3.** Apparently cognizant of plaintiff's disability status, Lieutenant Parkes informed plaintiff of his right to respond to IIS by mail, if, due to his present condition, plaintiff was unable to respond in person.

of the incident would have been included in the IIS "investigation case file." However, having received no response from Williams on January 17, 1980, IIS personnel concluded that he did not intend to cooperate in the investigation. True to the warning set forth in Lieutenant Parkes' letter, IIS deemed Williams' file completed, despite the absence of any statement from Williams concerning the incident.

Pursuant to the "line review" procedure dictated by SPD *Manual* § 1.09.040, the IIS file was routed through plaintiff's chain of command for review and recommendation. At the completion of this process, a majority of Williams' commanders recommended a finding of "sustained" on two charges: (1) use of excessive force against a prisoner, and (2) failure to cooperate with a departmental investigation. The IIS file, and the commanders' recommendations, were then forwarded to Chief Fitzsimons for his review and action.

Chief Fitzsimons determined that the sustained allegation of excessive force against a prisoner warranted the demotion of plaintiff from the rank of sergeant to police officer. Chief Fitzsimons' decision was based largely on his concern for the bad example Williams, in a supervisory capacity as sergeant, had set for other officers in the SPD.[4] Accordingly, on January 24, 1980, Chief Fitzsimons issued Personnel Order No. 80–4, which by its terms purported to demote Williams to the rank of police officer effective immediately.

Williams received a letter from Chief Fitzsimons and an SPD Disciplinary Action Report at his home on January 24, 1980, informing him of the demotion and of his right to a departmental disciplinary hearing on the action. Williams timely returned the Disciplinary Action Report to Chief Fitzsimons, having marked the box indicating his desire to exercise his right to a disciplinary hearing. Although Chief Fitzsimons appointed a Disciplinary Hearing Panel on January 31, 1980, that Panel was disbanded due to Williams' desire to delay the hearing until his physical condition improved.

On March 3, 1980, plaintiff's counsel wrote to Chief Fitzsimons, arguing that under governing state statutes the Chief had no authority to demote plaintiff during the period of plaintiff's disability leave.[5] Upon review of the letter and consultation with counsel for the City of Seattle, Chief Fitzsimons agreed. He thereupon entered Personnel Order 80–16, superseding the previous demotion order and reinstating Williams to the rank of sergeant. However, Personnel Order 80–16 also provided that Williams' demotion would again become effective at the moment his disability leave terminated.

Williams left disability leave and returned to work on July 3, 1980. Although he could have received a disciplinary hearing prior to this date had he requested one, he chose not to do so because of his health. Williams did request such a hearing on July 3, 1980, and asked the Chief to suspend the demotion until the hearing was held. Despite plaintiff's plea, Chief Fitzsimons carried out the demotion order immediately.

For the first time, Williams gave his statement concerning the November 11, 1979 incident to IIS on July 8, 1980. In early August of 1980, a Disciplinary Hearing Panel conducted an evidentiary hearing on the matter. At that hearing, plaintiff called witnesses in his favor, cross-exam-

---

**4.** Plaintiff has never contended, and the evidence does not suggest, that the demotion decision was motivated by any personal animosity harbored against plaintiff by Chief Fitzsimons.

**5.** Wash.Rev.Code Ann. § 41.26.120 (1984) provides, in pertinent part, as follows:
No disability retirement allowance shall be paid until the expiration of a period of six months after the discontinuance of service during which period the member, if found to be physically or mentally unfit for duty ... shall receive an allowance equal to his full monthly salary.... However, if, at any time during the initial six-month period, the disability board finds the beneficiary is no longer disabled, his disability leave allowance shall be canceled and he shall be restored to duty in the same rank or position ... held ... at the time he became disabled.

ined adverse witnesses, presented his explanation of the incident, and was represented by counsel. The Panel voted 3–2 to sustain the allegations of unnecessary force against a prisoner and failure to cooperate with a departmental investigation. The Panel recommended, however, that Williams be reinstated to the rank of sergeant. Chief Fitzsimons reviewed the Panel findings and recommendation, and confirmed his demotion order on August 22, 1980.[6]

Williams appealed his demotion to the Seattle Public Safety Civil Service Commission, and participated in an evidentiary hearing before that body. On October 22, 1980, the Commission sustained both allegations of misconduct, and found that the demotion was "made in good faith for cause." Williams did not seek judicial review of the Commission's decision in the state courts. He filed the present action on July 1, 1983.

## II.

At the close of the plaintiff's case, and again at the completion of all the evidence, defendants moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a). Defendants contended that the evidence established plaintiff had received all process constitutionally due prior to his demotion on July 3, 1980. Upon consideration of the evidence, the Court found no factual dispute regarding the process afforded plaintiff prior to his demotion. Defendants' motions therefore turned upon the legal question of what process was due.

The Court denied both motions without prejudice. At the close of the evidence, the Court instructed the jury that plaintiff had been wrongfully denied an evidentiary hearing prior to his demotion, and that plaintiff was to be compensated for any mental or emotional distress he may have suffered as a result.[7] Final determination of the process due plaintiff under the Due Process Clause was reserved pending the jury's verdict.

The jury returned a verdict in favor of plaintiff in the amount of $10,000. Defendants now move for judgment notwithstanding the verdict, again maintaining that plaintiff received all process constitutionally due.

## III.

Plaintiff's sole claim in this § 1983 action is that his federal constitutional right to due process was violated when he was demoted without having first been afforded a disciplinary hearing as required by the SPD *Manual*. Williams did have a constitutionally protected property interest in continued employment as an SPD sergeant. However, as will be demonstrated below, Williams has mistakenly equated his pre-demotion procedural entitlements under departmental regulations with that process constitutionally due him under the Due Process Clause. Because the Court concludes that Williams was afforded all process constitutionally due prior to his demotion, his claim for relief under § 1983 must fail.

Williams relies on *Punton v. Seattle Public Safety Commission*, 32 Wash.App. 959, 650 P.2d 1138 (1982), *petition for review denied*, 98 Wash.2d 1014 (1983), for the proposition that violation of his right under the *Manual* to a pre-demotion disciplinary hearing gives rise to a *prima facie*

---

**6.** As the "appointing authority," Chief Fitzsimons is not bound by the recommendations of the Disciplinary Hearing Panel. *See Manual of Rules and Procedures* § 1.09.030(2)(a) (1980). The Chief's final disciplinary action is subject to review by the Seattle Public Safety Civil Service Commission, which determines whether the action was "made in good faith for cause." *See* Seattle Municipal Code § 4.08.100 (1980).

**7.** Because plaintiff's demotion was upheld by the Seattle Public Safety Civil Service Commis-

sion after a full evidentiary hearing, plaintiff was potentially entitled only to compensation for actual harm resulting directly from the failure to accord him a pre-demotion evidentiary hearing. *See Jones v. Los Angeles Community College District,* 702 F.2d 203, 207 (9th Cir.1983); *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 781 (9th Cir.1982). Although plaintiff contested the fairness of that hearing, the evidence was totally insufficient to sustain such a charge.

deprivation of due process. In *Punton*, the Court of Appeals of Washington reviewed the claim of another Seattle police officer that his termination from the SPD was constitutionally invalid because it was not preceded by a disciplinary hearing. 32 Wash.App. at 961, 650 P.2d at 1139. Upon analysis of the identical SPD *Manual* at issue in this case, and the collective bargaining agreement between the City of Seattle and the Seattle Police Officers' Guild, the court concluded that Officer Punton was indeed entitled to a pretermination disciplinary hearing under *Manual* § 1.09.-040.[8]

*Punton* came before the Court of Appeals of Washington as an action for judicial review of the Seattle Public Safety Civil Service Commission's affirmance of Officer Punton's termination. Having concluded that the *Manual* entitled Officer Punton to a pretermination hearing which he did not receive, the court could have resolved the case on nonconstitutional grounds, holding that the Chief had not effected the termination in the "mode required by law." Wash.Rev.Code.Ann. § 7.16.120(2) (1961); *See Punton*, 32 Wash. App. at 965, n. 5, 650 P.2d at 1142. Instead, the court engaged in a federal constitutional analysis of the termination. The court found that the disciplinary hearing procedures required by the *Manual* constituted "substantive" elements of Officer Punton's property interest because they limited the Chief's pre-hearing authority to ordering suspension of the officer. *Punton*, 32 Wash.App. at 968, 650 P.2d at 1143. Concluding that the failure to follow such procedures "could logically be analyzed as an infringement of a 'property' right," the court held that violation of the procedures gave rise to a *prima facie* deprivation of due process. *Id.* at 967–68, n. 6, 650 P.2d at 1143.

■ This analysis is misguided. The Due Process Clause protects certain *substantive* rights—life, liberty, and property—from deprivation except pursuant to constitutionally adequate procedures. *Cleveland Board of Education v. Loudermill,* — U.S. —, —, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *See* U.S. Const. amend XIV, § 1. "The categories of substance and procedure are distinct." *Loudermill,* — U.S. at —, 105 S.Ct. at 1493. Procedural rules which impose substantive limitations on the discretion of the decisionmaker are not themselves "property" interests.[9] Rather, such procedures are at most a means by which constitutionally protected interests in *substantive* entitlements may be created. *See, e.g., Goodisman v. Lytle,* 724 F.2d 818, 820–21 (9th Cir.1984) (tenure); *Parks v. Watson,* 716 F.2d 646, 656–57 (9th Cir.1983) (street vacation); *Jacobson v. Hannifin,* 627 F.2d 177, 180 (9th Cir.1980) (gaming license); *But see Loudermill,* — U.S. at —, 105 S.Ct. at 1493 (property cannot be defined by the procedures provided for its deprivation).

■ The constitutionally protected interest in this case is Williams' substantive property right in continued employment as an SPD sergeant, absent good cause for

---

8. The court reached this conclusion despite language in the collective bargaining agreement providing that "notwithstanding the hearing procedure enumerated ... it is understood that if deemed appropriate by the Chief ... discipline or discharge may be implemented immediately." *See* Trial Exhibit A–1. This Court has serious reservations about the analysis employed in *Punton* to subjugate the collective bargaining agreement to the *Manual,* inasmuch as the *Manual* apparently was drafted to effectuate the terms of the collective bargaining agreement. However, because the issue is one of state law, the Court defers to the *Punton* decision in this regard.

9. Although property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), federal constitutional law determines whether those interests are protected by the Due Process Clause. *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). Thus, the *Punton* court's characterization of the hearing procedures as a substantive property interest is not controlling.

demotion or discharge.[10] *See* Seattle Municipal Code § 4.08.100 (1980). The process constitutionally due Williams prior to deprivation of that property interest is determined not by the procedures set forth in the SPD *Manual,* but rather by the requirements of the Due Process Clause. *Loudermill,* —— U.S. at ——, 105 S.Ct. at 1493.

The "root requirement" of the Due Process Clause is that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Loudermill,* —— U.S. at ——, 105 S.Ct. at 1493; *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). The specific dictates of due process are determined by balancing the competing interests at stake in the particular case. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In public employment cases such as this, these interests are (1) plaintiff's private interest in retaining his position of employment, (2) defendants' governmental interest in expeditious removal or demotion of unsatisfactory employees and in avoidance of administrative burdens, and (3) the risk of erroneous deprivation. *Loudermill,* —— U.S. at ——, 105 S.Ct. at 1493; *See Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

In the recent *Loudermill* decision, the Supreme Court considered the process due two Ohio public employees—a security guard and a bus driver—prior to their termination by the defendant school boards. Under Ohio law, the employees could be terminated only for cause, and were entitled to full post-termination evidentiary hearings and judicial review. After balancing the competing interests, the Court concluded that pre-deprivation process in public employment cases need not definitely resolve the propriety of the employer's action. *Loudermill,* —— U.S. at ——, 105 S.Ct. at 1494. Rather, the pre-deprivation process must simply provide an "initial check against mistaken decisions—essentially, a determination of whether there are

reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* The Court held that where a prompt post-deprivation evidentiary hearing is available, due process requires only that the employee be afforded notice of the charges, an explanation of the employer's evidence, and an opportunity to present "his side of the story" prior to the deprivation. *Id.* A pre-deprivation evidentiary hearing is not constitutionally mandated. *Id.*

Analysis of the three competing interests at stake in the present case confirms that Williams was not constitutionally entitled to an evidentiary hearing prior to his demotion from the rank of sergeant to police officer. Williams' private interest in retaining his rank, from a "property" standpoint, is the difference in pay and benefits between sergeants and police officers in the SPD. Although the loss of several hundred dollars in pay per month is substantial, it is less compelling a deprivation than that experienced by the terminated employees in *Loudermill.* Given the availability of a post-demotion evidentiary hearing within a few months of the deprivation, the pre-hearing financial loss suffered by plaintiff does not justify process beyond that which the *Loudermill* court deemed due.

The governmental interest, on the other hand, is stronger in this case than in *Loudermill.* The ability of the Chief of Police to maintain the discipline, morale, and effectiveness of the department depends, in no small part, on his demonstration of prompt and direct disciplinary action against supervisory personnel who engage in misconduct. Although these concerns do not entirely excuse the Chief from affording supervisory personnel a pre-discipline opportunity to be heard, it does suggest that the extent of pre-discipline process need not be elaborate.

Finally, the insubstantial risk of erroneous disciplinary action by the Chief under the facts of this case also weighs against

---

**10.** Plaintiff has not alleged deprivation of a liberty interest.

Williams' claim of a constitutional entitlement to a pre-demotion evidentiary hearing. Given the extensive IIS investigation—in which Williams had an opportunity to participate by submitting his statement—and the "line review" conducted by Williams' chain of command prior to submission of the case to Chief Fitzsimons for disposition, the risk of erroneous action by the Chief was slight. Plaintiff's characterization of these procedures as "summary" ignores the extent of the department's efforts to discern the facts of the incident in question. The Court cannot conclude that a pre-demotion evidentiary hearing would reduce the likelihood of erroneous action by the Chief to a constitutionally significant degree.

These factors compel the Court to conclude that Williams, like the public employees in *Loudermill,* was constitutionally entitled only to notice of the charge, an explanation of the evidence against him, and an opportunity to respond prior to the Chief's disciplinary decision. The undisputed facts of this case indicate that plaintiff received all such process prior to the Chief's entry of the first demotion order on January 24, 1980. The letter from Lieutenant Parkes of IIS, received by plaintiff at his home on January 12, 1980, fully explained the allegations of excessive force used against a prisoner, and indicated the source of those allegations.[11] The letter further informed Williams of his opportunity, and indeed obligation, to respond to those allegations by January 16, 1980, and the consequences for failing to do so. Having received no response from Williams by January 17, 1980, the IIS appropriately concluded Williams did not wish to participate in the investigation, and forwarded the file for line review and disposition by Chief Fitzsimons.

Nothing in the facts of this case excuses Williams' failure to respond to IIS as directed. Despite Williams' argument to the contrary, the Court can find no support for the proposition that a policeman on disability leave is somehow "immunized" from his obligation to cooperate with an IIS investigation, if directed to do so. At a minimum, Williams had a personal, non-delegable duty to respond to IIS and request deferral of his participation in the investigation pending improvement of his physical condition. That Williams relied on the Police Officers' Guild to contact IIS on his behalf does not turn the department's good-faith completion and disposition of the investigation into a denial of due process. Williams was afforded the *opportunity* to respond prior to the Chief's disciplinary decision. Through no fault of the department, he failed to do so.

The Court notes with interest that at no time prior to July 3, 1980, did Williams offer to provide a statement to IIS regarding the incident in question. According to his own testimony, Williams suffered the same physical condition after that date as during his disability leave. Apparently, he concluded—erroneously—that he was free of any departmental obligations while on disability leave.

In summary, the evidence establishes beyond dispute that Williams was afforded notice of the charges, an explanation of the evidence, and an opportunity to respond prior to the Chief's decision to demote Williams from sergeant to police officer. Due process required nothing more. That Williams' demotion was not preceded by an evidentiary hearing as required by the SPD *Manual* does not change this result. Accordingly, his constitutional claim for relief under § 1983 must be denied, and defendants' motion for judgment notwithstanding the verdict must be GRANTED.

The Clerk of this Court is directed to enter Judgment in favor of defendants dismissing this action with prejudice.

---

**11.** Although the letter did not specifically advise plaintiff that he could be demoted if the allegations were sustained, abusive treatment of prisoners is identified as sufficient cause for demotion and discharge in Rule 13 of the Seattle Public Safety Civil Service Ordinance (1980). Plaintiff has never denied knowledge of the potential disciplinary consequences of prisoner abuse.

The Clerk is further directed to send uncertified copies of this Memorandum Decision and of the Judgment to all counsel of record.