**Edward DelSIGNORE, Plaintiff,**

**v.**

**Joseph DiCENZO, in his capacity as Acting Chief of Police of North Providence, et al., Defendants.**

**Civ. A. No. 89–0403 P.**

United States District Court,
D. Rhode Island.

July 1, 1991.

Donald R. Lembo, North Providence, R.I., for plaintiff.

Mary June Ciresi, North Providence, R.I., for defendants.

## OPINION

PETTINE, Senior District Judge.

In December, 1986, the plaintiff in this case, Edward DelSignore, was promoted to the position of sergeant in the North Providence Police Department. Approximately two years later, he was, without notice, demoted to his previous rank of patrolman. He now brings this Section 1983 action against police and town officials alleging that he was denied procedural due process in violation of the Fourteenth Amendment. By stipulation of the parties, the case was submitted to this Court on an agreed statement of facts and trial was waived. After reviewing the facts and the applicable law, I find that because the defendants provided no pre-demotion notice and opportunity to be heard, plaintiff was denied due process.

## I. STIPULATED FACTS

DelSignore was hired by the Town of North Providence as a patrolman on May 1, 1978; after completing his probationary period of one year he became a permanent member of the police department pursuant to Section II, 2.1(D) of the collective bargaining agreement between the police and the Town. DelSignore was promoted to sergeant on December 27, 1986 and successfully completed his six-month probationary period for that rank. From then through February 8, 1989, DelSignore held the rank of sergeant continuously and without interruption. No grievance from any source was filed concerning his promotion.

In 1987, the Fraternal Order of Police, Lodge No. 13 filed a grievance concerning the promotion of another officer, namely, James Taylor, to the rank of sergeant. An arbitration hearing was conducted with respect to that grievance. DelSignore was not a party, directly or indirectly, in that action (but his promotion was addressed, see *infra* note 1). On December 31, 1987, the arbitrator made an award rescinding Taylor's promotion and ordering the promotion of Officers Griffith and Rekrut. Thereafter, on or about April 1, 1988, the Lodge filed an unfair labor practice claim with the State Labor Relations Board which alleged that the Town of North Providence had failed to implement the arbitrator's award. The Board concluded that the Town was guilty of an unfair labor practice due to its failure to implement the arbitrator's award. A decision and order to that effect was issued by the Board on October 19, 1988. DelSignore was not a party or a participant in that case nor was his status as sergeant ever addressed by the October 19, 1988 compliance order. DelSignore continued in his rank of sergeant throughout both proceedings and, indeed, subsequent to the date of the Board's decision and order and through February 8, 1989.

On February 9, 1989, Joseph DiCenzo, acting chief of police, notified DelSignore in writing that effective immediately, his rank would be reduced from that of sergeant to that of patrolman first class and that said reduction was predicated upon an order issued by the State of Rhode Island Labor Relations Board.

Immediately upon being notified of his reduction in rank, DelSignore attempted to file a grievance with Lodge No. 13, but the grievance was not acted upon by the Lodge. Following DelSignore's demotion, the Town immediately complied with the Board's order of October 19, 1988 by rescinding Taylor's promotion and by promoting Officers Griffith and Rekrut.

As a result of DelSignore's reduction in rank, he sustained lost wages in the sum of $6,077.11 as of March 29, 1991 and continues to lose $67.13 per week for as long as the reduction in rank is in effect.

## II. DISCUSSION

■ The Fourteenth Amendment prohibits the government from depriving individuals of "life, liberty or property" without due process of law. Thus, the threshold inquiry is whether DelSignore had a property interest in the continued rank of sergeant. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Such "[p]roperty interests are not created by the Constitution, [rather] 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Id.* (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ The parties have implied that this Court may discern from the collective bargaining agreement whether such a right exists. Whether an employee has a property right or not depends upon whether he has "a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Such a claim can be established by showing that the employee is not an "at will" employee, but rather an employee that can only be fired for "just cause." *See Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92. The collective bargaining agreement, while addressing tenure on the force and promotion procedures, does not address the grounds for demotion or termination. I must, therefore, look to local law, the charter and ordinances of the Town of North Providence, to determine whether DelSignore has a protected property interest.

■ Article 8, Chapter 2 of the Charter states that all police "shall hold their respective position[s] *during good behavior"* (emphasis added). This is repeated in Article I, Section 26–4 of the town ordinances. Specifically regarding demotion, Section 26–8 states "[t]he Director of Public Safety may return a promoted Police officer to the position held by such Police officer at the time of such promotion, when said Police officer *fails to demonstrate the ability to perform the duties required* of the new position ..." (emphasis added). Finally, the Civil Service Ordinance, Chapter XI, Section 4, which applies to police officers, states that "[a] permanent employee may be dismissed or demoted whenever in the judgement of the appointing authority the employee's *work performance or misconduct* so warrants" (emphasis added). As these laws plainly indicate, police officers can be demoted or fired only for cause. DelSignore, therefore, had a protected property interest in the rank of sergeant. See *supra, Loudermill,* 470 U.S. at 538–39, 105 S.Ct. at 1491–92.

■ Even assuming *arguendo* that under "normal" circumstances, DelSignore would have a protected interest in his rank, the defendants contend that in this case, the plaintiff cannot be deprived of such because he was never legitimately promoted. In other words, they argue that he cannot be "deprived" of something that he was never entitled to. This argument stems from the arbitration proceedings. Although DelSignore was not a party to the arbitration hearing and the *order* did not specifically address *his* status, the arbitrator did decide that DelSignore was improperly promoted.[1] Defendants' argu-

1. The collective bargaining agreement and the town civil service ordinances provide that promotions of police will be made, in part, on the basis of a competitive test. Applicants are graded and listed in order of their scores. At the time that Taylor and DelSignore were promoted, three sergeant positions were available. Neither DelSignore nor Taylor were originally listed among the top three candidates. The timing of the filling of the positions was such that DelSignore and Taylor were promoted ahead of the officers in the second and third slots on the list. The arbitrator found that DelSignore and Taylor were promoted improperly and that this violated the collective bargaining agreement. He ordered that the "skipped over" officers be promoted and that Taylor be demoted. The arbitrator noted, however, "[i]t is not for the arbitrator to address the issue of the status of Edward DelSignore. It is for the town to determine."

ment, however, was addressed by the *Loudermill* Court. 470 U.S. at 539 n. 5, 105 S.Ct. at 1491 n. 5. The defendants in *Loudermill* had argued that Loudermill had no property right in his employment because he lied on his job application and would not have been hired had he answered truthfully. *Id.* In rejecting this argument, the Court stated that "the argument relies on a retrospective fiction inconsistent with the undisputed fact that [plaintiff] was hired and did hold the ... job. The [defendant] cannot escape its constitutional obligations by rephrasing the basis for termination as a reason why [plaintiff] should not have been hired in the first place." *Id.* I find this language squarely on point.

The First Circuit Court of Appeals has carved out a limited exception to this aspect of *Loudermill*. *Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314, 319 (1st Cir.1989). That exception, however, only applies when under the applicable local law the conduct in question renders "null and void any property rights associated" with the position. *Kauffman v. Puerto Rico Telephone Co.*, 841 F.2d 1169, 1175 (1st Cir.1988).

In *Kauffman*, career employees of the Puerto Rico telephone company, a quasi-public corporation, brought a civil rights action against the company claiming they were discharged for their political affiliations *and* without notice or pretermination hearing. The circuit court affirmed the district court's grant of summary judgment for the defendants holding that the district court was correct in its finding that "the plaintiffs had failed to generate a genuine issue of material fact regarding their claim that their discharges were politically motivated," *id.* at 1172, and also correct in "conclud[ing] that under Puerto Rico law any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position." *Id.* at 1173. The *Kauffman* court reviewed the applicable Puerto Rican personnel laws and then specifically addressed and distinguished *Loudermill*.

Finally, and most importantly, in *Loudermill* there is no indication that under [the applicable state] law, a false statement on an application form for a civil service position could render null and void any property rights associated with attaining such a position.... In [*Kauffman*], on the other hand, ... the district court reasonably concluded that under Puerto Rico law, failure to hire in compliance with regulation 8.4 [, a regulation adopted to provide, among other things, a preference for internal candidates,] rendered null and void the property rights associated with the plaintiffs' positions. *Id.* at 1175.

The circuit court explained the derivation of the applicable Puerto law as follows:

[T]he [telephone company] promulgated regulation[s] ... *under order of the Puerto Rico Supreme Court to comply with policies underlying the Personnel Act;* that *court* has, in turn, held that such regulation furthers the purposes of that Act; *the court has also held that acts contrary to laws and regulations furthering the underlying values of the Personnel Act are void.* Thus, to the extent that the plaintiffs were hired in violation of [the] regulation[s], they obtained their career positions 'on the basis of standards foreign to that category,' and, therefore, could not, upon termination, benefit from the 'property' status of such positions. *Id.* at 1174 (citations omitted) (emphasis added).

In the instant case, I have found nothing in the collective bargaining agreement, the town ordinances, or any Rhode Island State Court decisions indicating that a technically deficient promotion voids a public employee's property right. I, therefore, find that the *Kauffman* exception does not apply and *Loudermill* governs.

Having decided the threshold issue—whether DelSignore had a protected property interest in his rank—"'the question remains what process is due.'" *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). This answer, unlike the answer to the threshold question discussed *supra, is* derived from the Constitution,

not local law. *Id.*, 470 U.S. at 541–42, 105 S.Ct. at 1492–93. As an initial matter, defendants argue that *no* process is due because DelSignore did not exhaust his administrative remedies. "The Supreme Court, however, has held expressly that section 1983 claimants need not avail themselves of state judicial and administrative remedies before going to federal court." *Kercado–Melendez v. Aponte–Roque*, 829 F.2d 255, 259 (1st Cir.1987) *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988) (citing *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974)). Defendants' reliance on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) is misplaced. In *Parratt*, a state prisoner alleged that he was deprived of property without due process when hobby materials that he ordered were lost as a result of the prison's failure to follow its usual procedures for receipt of mail packages. *Id.* at 529, 101 S.Ct. at 1909. The Court determined that a state tort action would be the appropriate remedy; there was no constitutional violation. *Id.* at 544, 101 S.Ct. at 1917. Thus, the *Parratt* Court did not address the issue before this Court today.

Moreover, the defendants reference to the union grievance procedure and the state post-termination hearing process is not dispositive; these are all after-the-fact procedures. The Due Process Clause "requires 'some kind of hearing' *prior* to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (emphasis added). In *Loudermill*, the Supreme Court determined that "[t]he tenured [2] public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to the adverse action even when post-action procedures are available. *Id.* at 546, 105 S.Ct. at 1495.

█ The specific "timing and content of the [pre-action] notice and the nature of the hearing [in each case] depend[s] on the appropriate accommodation of the competing governmental and private interests involved." *Click v. Board of Police Com'rs*, 609 F.Supp. 1199, 1205 (W.D.Mo.1985); *see Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493; *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In the context of public employment, the interests "are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of erroneous termination." *Loudermill*, 470 U.S. at 542–43, 105 S.Ct. at 1493–94. I must, therefore, balance these factors and decide whether the *Loudermill* formulation is appropriate in this case.

Regarding the private interest involved, DelSignore's interest in retaining his rank is not as compelling as the interest of the an employee who is actually fired, as in *Loudermill*. *See Williams v. Seattle*, 607 F.Supp. 714, 720 (W.D.Wash.1985); *Sewell v. Jefferson County Fiscal Court*, 1987 WL 109699 at 3–4, 1987 U.S.Dist. LEXIS 14637 at 8–9 (W.D.Ky., Feb. 4, 1987). It is not, however, an insignificant interest. Loss of rank entails a reduction in pay and benefits. *See Williams*, 607 F.Supp. at 720.

As to the risk of an erroneous personnel action, there can be no doubt that the opportunity for the employee to present his side of the story prior to termination may significantly reduce the risk of such erroneous action. *Loudermill*, 470 U.S. at 543, 105 S.Ct. at 1493. "[T]he right to [such] a hearing does not depend on a demonstration of certain success." *Id.* at 544, 105 S.Ct. at 1494. Moreover, " '[n]o better instrument has been devised for arriving at

---

**2.** DelSignore was "tenured" to the extent that under the collective bargaining agreement he had achieved "permanent" status as a sergeant because he had successfully completed his probationary period for that position and could only be demoted for cause. See, *supra*, discussion of Section II, 2.1(D) of the collective bargaining agreement.

truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.' " *Click,* 609 F.Supp. at 1206 (quoting *Goss v. Lopez,* 419 U.S. 565, 580, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975)). In this case, the risk of erroneous determination was no more or less serious than it was in *Loudermill.*

Although the risk of erroneous determination is the same, the other factors in the instant case are somewhat at variance from those in *Loudermill.* The government's interest in removing an unsatisfactory employee or in easing administrative burdens, however, still does not out outweigh the other interests. The government's interest in this case is not as compelling as in a situation where the employee is actually charged with wrongdoing. *See Loudermill,* 470 U.S. at 544, 105 S.Ct. at 1494. DelSignore presented no danger or threat; there is every indication that he had performed his job satisfactorily for two years. As the *Loudermill* Court noted, even "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay" until the hearing. *Id.* at 544–45, 105 S.Ct. at 1494–95. I, therefore, find that even though DelSignore's interest in his rank is less compelling than that of a terminated employee, this is balanced by the government's weaker interest in immediate action. DelSignore was thus entitled to the same pre-demotion process afforded the plaintiffs in *Loudermill:* notice of the charges and the evidence against him as well as an opportunity to respond.[3] DelSignore did not receive any of these safeguards. De-

fendants merely notified him that his demotion was effective immediately, thereby violating DelSignore's right to procedural due process.

## III. RELIEF

■ The 1978 Supreme Court case of *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, is one of the leading cases discussing damages in Section 1983 actions. In that case, students who were suspended without procedural due process were not entitled to *compensatory* damages unless they could prove that they would not have been suspended if they had been afforded a proper hearing. *Id.* at 260, 98 S.Ct. at 1050. In dicta, the Court indicated disapproval of lower court cases in which damages were awarded to public employees who were fired with cause but without procedural due process. *Id.* at 260 n. 15, 98 S.Ct. at 1050 n. 15. After *Loudermill,* a split in the circuits developed with regard to the effect of the *Loudermill* decision on the availability of equitable relief absent a showing that the employment action was unjustified. *Compare Patkus v. Sangamon–Cass Consortium,* 769 F.2d 1251 (7th Cir.1985) (employee justifiably terminated but without due process was entitled to only nominal damages) *with Brewer v. Parkman,* 918 F.2d 1336 (8th Cir.1990) (under *Loudermill,* court may order hearing with ancillary relief of back pay and reinstatement without showing unjustifiable action by employer). To my knowledge, the First Circuit Court of Appeals has never addressed the effect of *Loudermill* on the *Carey* principles. After reviewing the existing cases, I am per-

---

**3.** Affording such limited pre-demotion process is predicated on the availability of a full post-demotion hearing. *Williams,* 607 F.Supp. at 720; *see Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. In this case, the town's civil service ordinance, chapter XI, section 4 provides: "When the appointing authority decides [to dismiss or demote an employee], he shall file with the employee and the personnel board a written notification containing a statement of the substantial reasons for the action. The employee shall be notified on or before the effective date of the action. The notice shall inform the employee that he shall be allowed ten calendar days from the effective date of the action to file

a reply with the appointing authority and personnel board and to request a hearing before the personnel board." The hearing is informal and the employee is entitled to be represented by counsel. *Id.* at section 6. North Providence does, therefore, provide a procedure for a post-termination/post-demotion hearing. I would note, however, that DelSignore was not notified of the availability of a hearing, as required by the ordinance. Because I find that DelSignore's procedural due process rights were violated by the lack of predemotion process, I need not decide what effect the lack of notification might have on this case.

 

suaded by the courts that have allowed ancillary equitable relief.

 In *Loudermill,* the Court directed public employers to "suspend an employee who posed a threat to the workplace, *with pay,* prior to the time the pretermination hearing is held." *Irizarry v. Cleveland Public Library,* 727 F.Supp. 357, 364 (N.D. Ohio 1989) (citing *Loudermill,* 470 U.S. at 544–45, 105 S.Ct. at 1494–95). "Based on *Loudermill,* this Court finds that the proper remedy is to place the defendant in the position that the Constitution mandates he be in prior to a pre[-demotion] hearing—awaiting said hearing while receiving pay." *Id.* at 364. This remedy, a hearing with ancillary reinstatement and back pay *until* the pre-demotion hearing, maintains the status quo. *Brewer,* 918 F.2d at 1341–42. Even beyond the words of *Loudermill,* there are compelling policy reasons for adopting this approach.

> "[It] ... serve[s] three purposes: first, it ... vindicate[s] the due process interest in a fair hearing; second, it ... keep[s] the federal court out of the state law decision-making process by allowing the state tribunal to decide whether the planned action ... is appropriate;[4] third, it ... give[s] parties with no actual damages under a tort compensation scheme [as outlined in *Carey*] an incentive to vindicate their federal rights—the prospect of the hearing, back pay, and the attorneys' fees award predicated on the injunction ... make[s] the litigation worthwhile."

*Id.,* at 1342 (quoting Beermann, *Government Official Torts and the Takings Clause: Federalism and State Sovereign Immunity,* 68 B.U.L.Rev. 277, 322 n. 185 (1988)).

> Finally, this Court finds untenable the proposition that an employer may, with impunity, violate an employee's constitutional rights and do so without fear of being held monetarily accountable for his or her actions. Although this Court does

find it somewhat regrettable that funds must come from the public treasury to compensate an employee whose rights were violated, the basis of the Court's regret is that the employee's rights were violated. The instant case is an example of a complete lack, by the defendants, of any attempt to give the plaintiff his constitutional right of notice and an opportunity to respond.

*Irizarry,* 727 F.Supp. at 364.

## IV. CONCLUSION

The plaintiff, DelSignore, had a constitutionally protected property interest in the rank of sergeant. When he was demoted without any prior notice or opportunity to respond, his due process rights were violated. For this violation, I order that he be given a pre-demotion hearing in accordance with this opinion and that, ancillary to that relief, he be awarded back pay from the time of the demotion and be reinstated to the rank of retired sergeant until the time of such hearing.[5]

SO ORDERED.

---

**4.** Under the strict construction of *Carey,* this Court would have to determine whether DelSignore would have been demoted had be received the required pre-termination hearing.

**5.** The back pay and the effect of reinstating DelSignore to the rank of retired sergeant is as stipulated by the parties in the Agreed Statement of Facts, *supra.*